# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Appellant,
v.
MIGUEL ANGEL JIMENEZ,
Defendant and Respondent.

S249397

Second Appellate District, Division Six
B283858

Ventura County Superior Court
2016041618

March 2, 2020

Justice Cuéllar authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Kruger, and Groban concurred.

PEOPLE v. JIMENEZ

S249397


Opinion of the Court by Cuéllar, J.


Consumers today entrust businesses with more personal data than ever before. Residing on remote servers and secured by protocols of varying strength, that trove of data is increasingly susceptible to breach and misuse. (See generally Douglas, *2020 Identity Theft Statistics* (January 2020) Consumer Affairs <https://www.consumeraffairs.com/finance/identity-theft-statistics.html> [as of Mar. 2, 2020].)[1] Like many states, California criminalizes not only the nefarious ends enabled by information misuse — credit card fraud, for instance, and tax fraud — but also the act of using personal identifying information without authorization. (Pen. Code, § 530.5, subd. (a).)[2] That distinction matters in this case.

What we must decide here is whether a felony conviction for misuse of personal identifying information under section 530.5, subdivision (a) can be reduced to misdemeanor shoplifting under Proposition 47, which was approved by voters in the November 4, 2014 General Election. We hold that it cannot. Proposition 47 added section 459.5 to the Penal Code, which dictates that an "act of shoplifting . . . shall be charged as shoplifting," and that "[n]o person who is charged with

_____

[1] All Internet citations in this opinion are archived by year, docket number and case name at <http://www.courts.ca.gov/38324.htm>.

[2] All further unlabeled statutory references are to the Penal Code.

1

shoplifting may also be charged with burglary or theft of the same property." (§ 459.5, subd. (b).) Its prohibition applies only to "burglary or theft" offenses. (*Ibid.*) Although misuse of identifying information is sometimes colloquially described as "identity theft," the language, context, and history of section 530.5, subdivision (a) tells us no "burglary or theft" offense is committed by virtue of a defendant violating that statute.

Reaching the opposite conclusion, the Court of Appeal below in *People v. Jimenez* (2018) 22 Cal.App.5th 1282 (*Jimenez*) relied on the similarity between defendant's conduct here — cashing a false check — and the conduct of the defendant in *People v. Gonzales* (2017) 2 Cal.5th 858 (*Gonzales*). What we held in *Gonzales* is that a burglary conviction based on conduct meeting the requirements for shoplifting under section 459.5 could be reduced to shoplifting under Proposition 47. (*Gonzales, supra*, 2 Cal.5th at p. 862.) Our holding gave effect to section 459.5, subdivision (b), which provides that a person who commits "[a]ny act of shoplifting" cannot "be charged with *burglary* or theft of the same property." (Italics added.) But Jimenez was not charged with burglary, and in any event, our inquiry here is not whether Jimenez's conduct could conceivably be called "shoplifting." We must address instead whether the public offense defined in section 530.5, subdivision (a), of which he was convicted, qualifies as a "theft" offense under section 459.5, subdivision (b).

It does not. Section 530.5 criminalizes the willful *use* of someone's personal identifying information for an unlawful purpose, not an unlawful *taking*. It is not a theft offense because criminal liability pivots on how the information was used rather than how it was acquired. The offense therefore evinces a

concern with the panoply of harms occurring when personal information is no longer personal.

A conviction for misuse of identifying information is not subject to reclassification as misdemeanor shoplifting. Because the Court of Appeal held otherwise, we reverse its judgment and remand.

## I.

In June 2016, defendant Miguel Angel Jimenez twice entered Loans Plus, a commercial check-cashing store in Oxnard, to cash a check from OuterWall, Inc., made payable to himself. The first check sought $632.47, and the second, $596.60. Each contained OuterWall's personal identifying information in the form of an account number. On both occasions, Loans Plus was open for business. And on both occasions, OuterWall had not issued the checks in Jimenez's name, nor did Jimenez have permission to possess, issue, or use the checks.

The People charged Jimenez with two felony counts of misusing personal identifying information in violation of section 530.5, subdivision (a) — an offense the prosecution informally calls "misuse of identity" and the defendant colloquially terms "identity theft." That section prohibits "willfully obtain[ing] personal identifying information" of another person "and us[ing] that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person." (§ 530.5, subd. (a).) The jury instructions provided the unlawful purpose for which Jimenez used OuterWall's account information: "unlawfully obtaining or attempting to obtain

money in the form of cash in exchange for a presented check without the consent of the other person." The jury convicted Jimenez of both counts.

In May 2017, Jimenez moved to reclassify his felony convictions to misdemeanors under Proposition 47: The Safe Neighborhoods and Schools Act. To decrease the number of people in prison for nonviolent crimes, Proposition 47 reclassified certain drug- and theft-related offenses from felonies or "wobblers" to misdemeanors. It did this by amending the statutes that defined those crimes and redefining the way terms are understood throughout the Penal Code. (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 8, p. 72 (Voter Information Guide) [adding, for instance, § 490.2 to lower the punishment for certain categories of grand theft "[n]otwithstanding . . . any other provision of law defining grand theft"].)

One such amendment enshrined in California law a new misdemeanor shoplifting offense. (§ 459.5.) Distinct from felony burglary based on the value of the goods, the structure entered, and the time of entry, the new shoplifting offense prohibits entering a commercial establishment "with intent to commit larceny" while the establishment is open during business hours, and where the value of the property taken or intended to be taken is $950 or less. (§ 459.5, subd. (a).) Also affecting the scope of this new offense is the following limitation: Any act of shoplifting "shall be charged as shoplifting," and, "[n]o person who is charged with shoplifting may also be charged with burglary or theft of the same property." (*Id.*, subd. (b).)

Jimenez made the case for relief relying on our recent opinion in *Gonzales*, *supra*, 2 Cal.5th at page 862, in which we

held that the shoplifting statute applied to an entry with intent to commit nonlarcenous theft. Like Jimenez, the defendant in *Gonzales* had entered a commercial establishment and cashed two checks containing another person's bank account information. (*Ibid.*) Because Jimenez committed essentially the same conduct as Gonzales, Jimenez argued his conduct, too, constituted misdemeanor shoplifting under section 459.5, subdivision (a). The trial court granted Jimenez's motion. It concluded that between *Gonzales* and our earlier opinion in *People v. Romanowski* (2017) 2 Cal.5th 903 (*Romanowski*), its " 'hands ha[d] been somewhat tied.' " (*Jimenez, supra,* 22 Cal.App.5th at p. 1286.) What we held in *Romanowski* is that theft of access card information could be reduced to a misdemeanor under another provision of Proposition 47, codified at Penal Code section 490.2. (*Romanowski, supra,* 2 Cal.5th at pp. 905–906.) *Romanowski* and *Gonzales*, the court said, mandated reduction of " 'conduct that has been described in Proposition 47 as a shoplifting type of offense.' " (*Jimenez*, at p. 1286.) " 'And even though [this case] involves a different charge,' it observed, 'it appears to be somewhat of a theft charge which was the focus of *Gonzale[s]* and *Romanowski.*' " (*Ibid.*)

The People appealed the trial court's decision to reduce Jimenez's conviction, and the Court of Appeal affirmed, reasoning that Jimenez's criminal conduct is "identical to Gonzales's conduct." (*Jimenez, supra,* 22 Cal.App.5th at p. 1289.) It observed that "both entered a commercial establishment during business hours for the purpose of cashing stolen checks valued at less than $950 each. Both defendants [entered with intent to commit] 'theft by false pretenses,' which 'now constitutes shoplifting under [section 459.5, subdivision

5

(a)].' " (*Ibid.*, quoting *Gonzales*, *supra*, 2 Cal.5th at p. 862.) And, the court explained, where a defendant's "underlying conduct constituted shoplifting," the preclusive effect of section 459.5, subdivision (b) — which provides that "[a]ny act of shoplifting as defined in subdivision (a) shall be charged as shoplifting" (§ 459.5, subd. (b)) — barred a charge of identity theft. (*Jimenez*, *supra*, 22 Cal.App.5th at p. 1291.) In sum, the court said, "[t]hat Jimenez committed identity theft in the course of the shoplifting does not alter the fact that he committed shoplifting." (*Id.* at p. 1290.)

The District Attorney filed a petition for review. We granted review to determine whether a felony conviction for misuse of personal identifying information can be reduced to misdemeanor shoplifting under Proposition 47.

## II.

As with most cases arising from Proposition 47, this one requires that we understand the interaction between a statutory scheme enacted by the Legislature and one enacted by the public. Because the scope of these statutory schemes is a question of law, we review de novo the Court of Appeal's interpretation of both the shoplifting statute enacted through Proposition 47 and the preexisting section 530.5, subdivision (a), of which Jimenez was convicted. (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) We look first to " 'the language of the statute, affording the words their ordinary and usual meaning and viewing them in their statutory context.' " (*People v. Gonzales* (2018) 6 Cal.5th 44, 49–50.) We must construe statutory language in context, bearing in mind the statutory purpose, and giving effect to the intended purpose of an initiative's provisions. (*Id.* at p. 50; see *California Cannabis*

*Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933 [explaining that our "primary concern is giving effect to the intended purpose of the provisions at issue"].) We may also consider extrinsic sources, "such as an initiative's election materials, to glean the electorate's intended purpose." (*People v. Gonzales*, *supra*, 6 Cal.5th at p. 50; *Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 158 ["[W]e may look to various extrinsic sources . . . to assist us in gleaning the [voters'] intended purpose"].)

Applying these principles, we conclude that section 459.5 does *not* encompass misuse of identifying information. The preclusive language of section 459.5, subdivision (b) — that "[a]ny act of shoplifting as defined in subdivision (a) shall be charged as shoplifting," and "[n]o person who is charged with shoplifting may also be charged with theft or burglary of the same property" — applies only as to theft or burglary offenses. Section 530.5, subdivision (a) does not define such an offense.

### A.

We first consider the statutory scheme approved by voters five years ago. The misdemeanor shoplifting statute under which Jimenez seeks a reduction is section 459.5. It is one of two new theft crimes reflecting the electorate's decision to downgrade certain felonies; the other is section 490.2, which defines petty theft. (*Romanowski*, *supra*, 2 Cal.5th at p. 907.) Section 459.5, subdivision (a), provides: "Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." Subdivision (b)

next provides the preclusive language on which Jimenez primarily relies: "Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property." (*Id.*, subd. (b).)

We granted review to determine whether Jimenez can secure relief under section 1170.18, subdivision (a), which allows defendants "serving a sentence for a conviction . . . of a felony or felonies" on Proposition 47's effective date of November 5, 2014, to petition to reclassify their eligible felony offenses to misdemeanor shoplifting. (§ 1170.18, subd. (a), added by Prop. 47, § 14; *People v. Martinez* (2018) 4 Cal.5th 647, 654 (*Martinez*).) But Jimenez was not a person "serving a sentence" for his conviction on November 5, 2014. Indeed, he did not even commit the relevant crime until 2016. He is ineligible for relief under section 1170.18. Jimenez, however, is not out of luck. We have previously held that "[d]efendants who had not yet been sentenced as of Proposition 47's effective date are entitled to initial sentencing under Proposition 47's amended penalty provisions." (*People v. Lara* (2019) 6 Cal.5th 1128, 1131.) This seems the more appropriate framework for Jimenez, who was neither sentenced nor convicted as of Proposition 47's effective date. Under either section 1170.18 or the standard in *People v. Lara,* Jimenez's entitlement to relief turns on whether the new shoplifting statute at section 459.5 altered or redefined the offense set forth in section 530.5, subdivision (a) — in other words, whether section 459.5 permitted the prosecutor to charge Jimenez with misuse of personal identifying information, or only with shoplifting.

8

The People charged a violation of, and Jimenez was convicted of violating, section 530.5, subdivision (a). Entitled "Unauthorized use of personal identifying information of another person," it provides: "Every person who willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense . . . ." (§ 530.5, subd. (a).) Personal identifying information is elsewhere defined to include "any name, address, [or] telephone number," as well as any "checking account number" and a host of other personal identifying information — from medical information and social security numbers to telecommunications data and mothers' maiden names. (§ 530.55, subd. (b).) In short, a conviction under section 530.5, subdivision (a) requires proof "(1) that the person willfully obtain[ed] personal identifying information belonging to someone else; (2) that the person use[d] that information for any unlawful purpose; and (3) that the person who use[d] the personal identifying information d[id] so without the consent of the person whose personal identifying information [was] being used." (*People v. Bollaert* (2016) 248 Cal.App.4th 699, 708–709, quoting *People v. Barba* (2012) 211 Cal.App.4th 214, 223 (*Barba*).)

Although lawmakers and the public sometimes refer to section 530.5, subdivision (a)'s prohibition on the misuse of personally identifying information as "identity theft," section 530.5, subdivision (a) makes no mention of theft. It makes no reference to the consolidated theft offenses in section 484. (See *Gonzales*, *supra*, 2 Cal.5th at p. 865.) It contains no

requirement, "central to the crime of theft[,] that the information be stolen at all" (*People v. Truong* (2017) 10 Cal.App.5th 551, 562 (*Truong*)), or that the victim's information was taken with "the intent to permanently deprive the owner of its possession" (*People v. Page* (2017) 3 Cal.5th 1175, 1182 (*Page*)). Indeed, by its very terms, the offense of misuse of personal identifying information can be accomplished by acquiring the information with valid consent, using it for an unlawful purpose, and returning it.

The structure and history of section 530.5 reinforce our understanding that "[t]he gravamen of the . . . offense is the unlawful use of a victim's identity." (*People v. Sanders* (2018) 22 Cal.App.5th 397, 400 (*Sanders*).) The Legislature enacted section 530.5 in 1997 as part of a slate of changes to California's Consumer Credit Reporting Agencies Act. (Stats. 1997, ch. 768, § 6, p. 5205.) Until section 530.5 took effect, "law enforcement agencies generally considered the defrauded business entity . . . to be the victim of identity theft, not the person whose identity was stolen so that the fraud could be committed." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 245 (2001–2002 Reg. Sess.) as amended May 1, 2000.) As a result, victims found it difficult to report the crime, seek damages, and clear their names. (*Ibid.*)

This vexing problem ballooned as the expansion of the Internet made it easier than ever before to access and misuse personal information. As part of a comprehensive attack on this growing problem, the bill's sponsor lobbied to create section 530.5. In contrast, "existing law [did] not provide any remedy for the real victim: the person whose credit has been damaged or ruined." (Sen. Com. on Public Safety, Analysis of Assem. Bill

No. 156 (1997–1998 Reg. Sess.) as amended July 3, 1997, p. 8.) Instead, the sponsor said, "all existing related crimes, such as grand theft (§ 484), fraudulent use of access cards (§§ 484d–484i) and using another person's identification in a financial statement (§ 532) are crimes against parties other than the person whose identity has been used." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 156 (1997–1998 Reg. Sess.) as amended July 3, 1997, pp. 7–8.) Thus was born the offense we now call "identity theft." It accompanied a set of reporting and verification requirements for consumer credit agencies, a series of police investigation protocols for identity theft reports, and new procedures by which victims could clear their names and block inaccurate information from their credit files. (*Id.* at pp. 2–3.)

Perhaps reflecting legislative concern to right-size the offense relative to the perceived societal harms at issue, the Legislature has amended section 530.5 nearly a dozen times since its enactment. That section currently provides that court records "shall reflect that [a] person whose identity was falsely used to commit [a] crime did not commit the crime" (§ 530.5, subd. (b)); creates separate offenses for acquisition or retention (*id.*, subd. (c)), and sale or transfer of personal identifying information "with intent to defraud" (*id.*, subd. (d)); prohibits mail theft as defined in the United States Code (*id.*, subd. (e)); and immunizes Internet service providers from liability for the defined offenses (*id.*, subd. (f)).

What this history reflects is a concern for the "ripples of harm" that "flow from the initial misappropriation" of identifying information — harm that often goes "well beyond the actual property obtained." (Sen. Com. on Public Safety,

Analysis of Assem. Bill No. 2886 (2005–2006 Reg. Sess.) as amended May 26, 2006.) Legislators recognized that "[v]ictims cannot easily change their name, birth date, social security number or address, and they should not have to do so." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1254 (2001–2002 Reg. Sess.) as amended Mar. 11, 2002, p. 8.) And the Legislature's continued revision of the statute — generally by broadening its scope — "shows that the felony hinged on the seriousness of the crime and of its consequences, rather than on the type or value of property involved" as in section 459.5. (*People v. Weir* (2019) 33 Cal.App.5th 868, 875 (*Weir*).) Appropriately, then, section 530.5 — unlike the theft offense at issue in *Romanowski* — resides in the chapter of the Penal Code titled "False Personation and Cheats," rather than the chapter titled "Larceny." (Cf. *Romanowski*, *supra*, 2 Cal.5th at p. 908; see *Truong*, *supra*, 10 Cal.App.5th at p. 561 ["Although commonly referred to as 'identity theft' [citation], the Legislature did not categorize the crime as a theft offense"].)

That distinction is no accident. The new shoplifting offenses are ill-suited to punish misuse of identifying information. (See, e.g., *Weir*, *supra*, 33 Cal.App.5th 868; *Sanders*, *supra*, 22 Cal.App.5th 397; *Truong*, *supra*, 10 Cal.App.5th 551.) The offenses are fundamentally different, and they reflect different legislative rationales. Consider shoplifting, whose rationale we recently discussed in *People v. Colbert* (2019) 6 Cal.5th 596. We explained that unauthorized entries — of the sort still chargeable as burglary — present an increased danger of violence because the entry is unwelcome, unexpected, and results in panic and risk to personal safety. (*Id.* at p. 607.) In enacting the shoplifting statute, "the electorate

signaled that these interests do not apply in the same way" during the day, when a person is stealing property worth $950 or less "in a place where he or she has been *invited* to peruse the goods and services that are on offer." (*Ibid.*) The physical intrusion element is missing, and with it the danger that makes burglary more culpable than shoplifting.

Section 530.5, subdivision (a), meanwhile, evinces a lack of concern with the time of day, the method of acquiring the information, its value, or even what — precisely — is done with it. The statute prohibits a person from "acquiring, retaining, or using information, rather than taking it," — itself a fair indicator that the Legislature was concerned with use, not theft. (*Weir, supra,* 33 Cal.App.5th at p. 874.) And on its face, it addresses harms reaching well beyond theft, implicating issues of privacy and control of personal data. (See *Barba, supra,* 211 Cal.App.4th at p. 226 [explaining that the statute aims to "address[] disruptions caused in victims' lives when their personal identifying information is used"].)

From the language, structure, and history of section 530.5, we glean that its purpose reaches far beyond what Proposition 47 pulled into its orbit. It is not a theft offense, but "an essentially unique crime." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2886, *supra,* as amended May 26, 2006.)

B.

Perhaps recognizing the mismatch between section 530.5 and Proposition 47, Jimenez focuses his argument on the similarity between his *conduct* and that of the defendant in *Gonzales.* The argument is intuitively appealing: Jimenez did, after all, enter a commercial establishment (Loans Plus) with

intent to commit theft by false pretenses — a course of conduct analogous to what we decided was enough to constitute shoplifting in *Gonzales*. (See *Gonzales*, *supra*, 2 Cal.5th at p. 862 [holding that because cashing a stolen check is a form of larceny under § 490, subd. (a), a defendant's conviction for burglary for "entering a bank to cash a stolen check for less than $950 . . . constitutes shoplifting under the statute"].) Jimenez thus contends he also committed shoplifting, and, under section 459.5, subdivision (b), an act of shoplifting "shall" be charged as shoplifting. To Jimenez, this means any conduct that a prosecutor could reasonably treat as fulfilling the elements of shoplifting must be charged as shoplifting, and cannot be charged as anything else, including misuse of identifying information.

Jimenez builds scaffolding on a tenuous foundation. His argument presumes a defendant's *conduct*, not his crime of conviction, is what Proposition 47 sought to reclassify. The Court of Appeal seems to have shared this view when it affirmed the reduction to shoplifting. It explained: "Jimenez's *conduct* is identical to Gonzales's conduct. They both entered a commercial establishment during business hours for the purpose of cashing stolen checks valued at less than $950 each." (*Jimenez*, *supra*, 22 Cal.App.5th at p. 1289, italics added.) Yet Jimenez's conduct, though unquestionably relevant, bears on only one aspect of our analysis. What triggers section 459.5, subdivision (b)'s bar is not only whether a defendant's course of conduct includes an act of shoplifting, but also whether the charged crime is burglary or theft of the same property. Conduct indeed bears on whether a defendant "may . . . be charged with burglary or theft of the

14

same property," but not on whether section 530.5 creates a "theft" offense. (§ 459.5, subd. (b).)

As we conveyed in *Martinez*, similarity of conduct is not pivotal. The critical question for reclassification is whether the felony *offense* " 'would have been . . . a misdemeanor under [Proposition 47] had [it] been in effect at the time of the offense.' " (*Martinez, supra*, 4 Cal.5th at p. 652, quoting § 1170.18, subd. (a).) Under *People v. Lara*, the question varies only in verb tense: Is the felony offense now a misdemeanor under Proposition 47? In *Martinez*, although the defendant committed conduct that, under another statute, may well have been reduced to a misdemeanor, we found him ineligible for resentencing because "none of the statutes amended or enacted by Proposition 47 altered the offense [of which he was convicted]." (*Martinez, supra*, 4 Cal.5th at p. 653.) Conversely, though the defendant in *Gonzales* committed conduct that could have been charged as misuse of identifying information — and, in Jimenez's case, was — we found him eligible for a reduction because he was charged and convicted of burglary, which Proposition 47 did alter. (*Gonzales, supra*, 2 Cal.5th at pp. 872, 876.) Only if the offense is eligible for reclassification must a court consider whether a defendant's conduct fulfills the elements of shoplifting, bringing it within Proposition 47's scope.

We can confirm this categorical understanding of Proposition 47's scope through the initiative's express "purpose and intent" to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession" absent a disqualifying prior. (Prop. 47, § 3(3).) In the same terms, the Legislative Analyst explained that the

initiative applied only to certain kinds of offenses, noting that it "[r]equires misdemeanor sentenc[ing] instead of felony for [specified crimes] when [the] amount involved is $950 or less" and "[r]equires resentencing for persons serving felony sentences for [specified] offenses unless [a] court finds [an] unreasonable public safety risk." (Voter Information Guide, *supra*, analysis of Prop. 47 by Legis. Analyst, at p. 34.) While we must be guided by Proposition 47's intended purpose to reduce punishment for certain nonserious, nonviolent offenses, we are not free to read into it *any* offense we might deem nonserious and nonviolent.

"Identity theft" is explicitly mentioned only once in Proposition 47: to create an exception to the Proposition's new rule allowing certain convictions for forgery to be reduced to misdemeanors. (Prop. 47, § 6.) The Legislative Analyst explained: "Under current law, it is a wobbler crime to forge a check of any amount. Under this measure, forging a check worth $950 or less would always be a misdemeanor, except that it would remain a wobbler crime if the offender commits *identity theft* in connection with forging a check." (Voter Information Guide, *supra*, analysis of Prop. 47 by Legis. Analyst, at p. 35, italics added.) The voters thus considered misuse of personal identifying information solely in the context of maintaining felony treatment for offenses that otherwise would be reducible to misdemeanors. This strongly suggests voters did not intend for "identity theft" convictions to be reduced to misdemeanors under Proposition 47.

The cases on which Jimenez relies underscore the centrality of the offense charged by the prosecution in the Proposition 47 analysis. In *Romanowski*, for instance, we

considered whether section 484e, subdivision (d) — prohibiting theft of access card information — qualifies for resentencing as petty theft under section 490.2. (*Romanowski*, *supra*, 2 Cal.5th at p. 908.) It was no small part of our analysis that section 484e explicitly defined theft of access card information as grand theft, which pulled it within the ambit of the new petty theft statute. (*Romanowski*, *supra*, 2 Cal.5th at p. 908.) But we confirmed that the offense also sounded in theft and sat comfortably in the "Larceny" chapter of the Penal Code. (*Id.* at pp. 908–909.)

We did much the same in *Page*, *supra*, 3 Cal.5th at page 1180. What we decided is that one version of Vehicle Code section 10851 — "taking or driving a vehicle without the owner's consent" — established an offense qualifying as petty theft under the new Penal Code section 490.2. As a carve-out for offenses otherwise deemed grand theft, that section mandates misdemeanor punishment for a defendant who "obtain[ed] any property by theft" where the value of the property was $950 or less. (*Page*, *supra*, 3 Cal.5th at pp. 1180, 1183.) Although Vehicle Code section 10851 did not "expressly designate the offense as 'grand theft' " and its prohibitions swept more broadly than "theft," we had previously identified a theft and non-theft way to commit the offense. (*Id.* at p. 1182.) The theft version of the vehicular offense fully mapped on to the new petty theft statute, and we thus concluded that version, alone, was eligible for reduction: " '[A] defendant convicted under section 10851(a) of unlawfully *taking* a vehicle with the intent to permanently deprive the owner of possession' has been convicted of stealing the vehicle." (*Id.* at p. 1184.)

The same doesn't hold for Jimenez's offense. Where Vehicle Code section 10851 contemplates two permutations —

one fully satisfying the elements of petty theft after Proposition 47 — Penal Code section 530.5, subdivision (a) contains no separate provision that, when violated, exclusively constitutes shoplifting or even theft. Instead the offense defined in section 530.5, subdivision (a) always requires more than "entering a commercial establishment with intent to commit larceny" during business hours — so proving shoplifting is not sufficient to prove misuse of identifying information under section 530.5, subdivision (a). (See § 459.5, subd. (a); *People v. Soto* (2018) 23 Cal.App.5th 813, 822 [distinguishing *Page* and *Romanowski* from offenses that are "not identified as grand theft and require[] *additional necessary elements* beyond . . . theft"].) Section 530.5, subdivision (a) also requires much *less* than the elements specified in section 459.5; indeed, misuse of personal identifying information contains *none* of the elements of section 459.5, subdivision (a). (Compare § 530.5, subd. (a) ["Every person who willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful purpose . . . is guilty of a public offense"] with § 459.5, subd. (a) ["shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)"].)

Jimenez nonetheless maintains that we used unequivocal language in *Gonzales* to hold that the only permissible charge in a case with facts analogous to those in this case is shoplifting. "A defendant must be charged only with shoplifting when the statute applies," we wrote, because "[i]t expressly prohibits alternate charging and ensures only misdemeanor treatment for

the underlying described conduct." (*Gonzales*, *supra*, 2 Cal.5th at p. 876.) Jimenez further argues that *Gonzales* stands for the proposition that whenever a defendant's conduct constitutes shoplifting, it can only be charged as shoplifting.

This argument misses the mark. *Gonzales* resolved a different question: whether a defendant was eligible for misdemeanor shoplifting resentencing under Proposition 47 when his conviction was for burglary based on a course of conduct involving entering a store to cash a fraudulent check. Our decision in *Gonzales* explained that the defendant was eligible for resentencing on those facts because of what was essentially a perfect overlap between the charged burglary and the facts that would have supported the shoplifting charge: The course of conduct rested on precisely the same entry, with the same intent, to take the same property, as would have supported a shoplifting charge. So Proposition 47's mandate that "[a]ny act of shoplifting . . . be charged as shoplifting" and "[n]o person who is charged with shoplifting may also be charged with burglary or theft of the same property" applied with full force. When we explained that a "defendant must be charged only with shoplifting when the statute applies" (*Gonzales*, *supra*, 2 Cal.5th at p. 876), what we meant is simply that a person whose conduct constitutes shoplifting could not be charged with burglary or a theft crime for that same conduct instead of shoplifting, as occurred in *Gonzales*. It does not follow that similar conduct, including conduct that fulfills the elements of the misuse of personal identifying information under section 530.5, subdivision (a), must always be charged only as shoplifting, even if no conviction for burglary or theft — the only crimes barred under section 459.5, subdivision (b) — is at issue. In fact, no

conviction for personal identifying information misuse even occurred in *Gonzales*.

The Attorney General also made another relevant argument in *Gonzales*: that Gonzales's burglary conviction was ineligible for resentencing because of the possibility that Gonzales might have entered with intent to violate section 530.5. In addressing this contention, we explained that a burglary charge might be permitted for entry with intent to commit acts other than theft of an amount equal to or less than $950. But section 459.5, subdivision (b)'s bar against burglary charges applied with full force to Gonzales because the only proof was of entry with the intent to steal property in an amount below the shoplifting threshold. (See *Gonzales*, *supra*, 2 Cal.5th at pp. 876–877.) No similar bar applies here. Jimenez was charged with a violation of section 530.5 — neither a burglary nor theft offense.

To therefore read the language of *Gonzales* as forcing the prosecution to charge only misdemeanor shoplifting for any misuse of personal identifying information involving $950 or less would lead to odd results — ones that make for an awkward fit with the statutes at issue. Consider a person who enters a commercial establishment during the day with the intent to steal a particular video game from the shelf. If a child were holding the video game and the person simply took the child along with the game, the course of conduct would likely be chargeable as kidnapping. (See § 207.) It defies logic to argue that Proposition 47 mandates only a misdemeanor shoplifting charge on those facts. We have no reason to believe Proposition 47 "extends to any course of conduct that happens to include" entry into a commercial establishment with intent to commit

larceny. At oral argument, Jimenez attempted to address this concern by contending that additional offenses could be charged with shoplifting, but only if the other offenses involved force or violence. To adopt such a test would be to write into the statute a limitation which is simply not there. Voters made clear that section 459.5's prohibition extends only to "burglary or theft" offenses. Because misuse of personal identifying information is neither, this proscription simply does not apply.

True: People who violate section 530.5, subdivision (a) will often use the information to commit some manner of theft, making the theft an important element of that second crime. This is what Gonzales was charged with doing when he stole his grandmother's checkbook and cashed two checks without her consent (*Gonzales*, *supra*, 2 Cal.5th at p. 862), and it bears some resemblance to the facts at issue here. No doubt it was this realization that prompted the Court of Appeal to conclude: "That Jimenez committed identity theft in the course of the shoplifting does not alter the fact that he committed shoplifting." (*Jimenez*, *supra*, 22 Cal.App.5th at p. 1290.) What would be more accurate, however, is to put it this way: That Jimenez committed shoplifting in the course of identity theft does not alter the fact that he committed identity theft.

## C.

Jimenez also posits that his conviction can be reduced to misdemeanor petty theft, the other new misdemeanor theft offense created by Proposition 47. (See § 490.2, subd. (a).) Section 490.2 provides: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty

dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor . . . ."

This argument fails, too. It falters for the same reason his conviction cannot be reclassified as shoplifting: Misuse of personal identifying information is not a theft offense. The offense described by section 530.5 criminalizes the improper *use*, not the illegal taking, of information. Like shoplifting, misuse of personal identifying information shares no common elements with petty theft. (Compare § 530.5, subd. (a) ["Every person who willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful purpose . . . is guilty of a public offense"] with § 490.2 ["[O]btaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft"].)

Endeavoring to support his expansive interpretation of section 490.2, Jimenez relies on two of our earlier cases, *Romanowski* and *Page*. As we have already explained, however, both of those cases involved crimes that could readily be classified as theft offenses. In *Romanowski* we noted that section 484, subdivision (a), theft of access card information, is explicitly defined as grand theft (*Romanowski, supra,* 2 Cal.5th at p. 908), clearly moving it into the scope of section 490.2 (see § 490.2, subd. (a) ["Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value . . . does not exceed nine hundred fifty dollars ($950) shall be considered petty theft"]). In *Page* we relied on our previous identification of a "theft" and "nontheft" way to commit the offense. (*Page, supra,* 3 Cal.5th at pp. 1182–

1183.)  There is no similar reason to conclude that misuse of personal identifying information is a theft offense.

## III.

The prohibitions on shoplifting and misuse of personal identifying information protect potential victims from different harms.  The shoplifting offense is like forgery and other nonviolent theft crimes:  It protects the entity with which the shoplifter is (in a manner of speaking) engaging — here, Loans Plus.  Section 530.5, subdivision (a) is different.  It protects primarily the person or entity whose information was unlawfully used without consent — here, OuterWall, who may have suffered repercussions from the misuse of its financial account information.  (See *Sanders*, *supra*, 22 Cal.App.5th at p. 403 [noting the "basic problem is that appellant's acts of stealing from merchants do not amount to a theft from the cardholder" because the "cardholder was harmed by the unlawful use of her card and thefts from the merchants do not make the cardholder a victim of those thefts"].)

Ultimately, use of the shorthand "identity theft" to describe the offense in section 530.5 doesn't somehow make the misuse of personal identifying information swallow up elements of the theft offense, nor does it otherwise "provide a reason to read into the statute an additional element that cannot be found by referring to the language of the statute." (*Barba*, *supra*, 211 Cal.App.4th at p. 227.)  Section 459.5 proscribes charging "burglary or theft of the same property" for shoplifting conduct (§ 459.5, subd. (b).)  But misuse of personal identifying information is not a "theft" offense, so it remains a perfectly valid charge where a defendant engages in actions including conduct overlapping with misdemeanor shoplifting but where

the course of conduct also fulfills elements — such as the misuse of personal identifying information that is all too common in the digital economy — wholly distinct from what a shoplifting conviction would require.

The judgment of the Court of Appeal is reversed, and this case is remanded to the Court of Appeal with instructions to send the case back to the trial court for sentencing not inconsistent with this opinion. To the extent it conflicts with this holding, *People v. Brayton* (2018) 25 Cal.App.5th 734 (review granted Oct. 10, 2018, S251122) is disapproved.

**CUÉLLAR, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Jimenez

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 22 Cal.App.5th 1282
**Rehearing Granted**

_____

**Opinion No.** S249397
**Date Filed:** March 2, 2020

_____

**Court:** Superior
**County:** Ventura
**Judge:** Manuel J. Covarrubias

_____

**Counsel:**

Gregory D. Totten, District Attorney, Lisa O. Lyytikainen and Michelle J. Contois, Deputy District Attorneys, for Plaintiff and Appellant.

Todd W. Howeth, Public Defender, and William M. Quest, Deputy Public Defender, for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michelle J. Contois
Deputy District Attorney
800 South Victoria Avenue
Ventura, CA 93009
(805) 654-3078

William M. Quest
Senior Deputy Public Defender
800 South Victoria Avenue, HOJ-207
Ventura, CA 93009
(805) 654-3032