Filed 10/22/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JEDEVAN BARATANG,<br><br>        Defendant and Appellant. | A155108<br><br>(San Mateo County<br>Super. Ct. No. 16-NF-014564) |

A jury convicted defendant Jedevan Baratang of felony theft from an elder under Penal Code section 368, subdivision (d).[1]  On appeal, defendant contends, among other things, that the trial court prejudicially erred by instructing the jury it could convict defendant of felony elder theft based on an identity theft theory regardless of the value of the property taken or obtained.  We conclude the court's instruction contradicts the plain language and legislative history of section 368, and the error cannot be deemed harmless beyond a reasonable doubt.  Accordingly, the conviction must be reversed.

---

[1]    Unless otherwise indicated, all further section references will be to the Penal Code.

1

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

On June 12, 2017, defendant was charged with one felony count of theft from an elder or dependent adult in violation of section 368, subdivision (d) (section 368(d)).  The information alleged that, between March 21 and May 27, 2016, defendant had committed theft with respect to the property and personal identifying information of Gloria C., having a value exceeding $950.[3]  Gloria C. is the sister of C.B., who had married defendant's father E.B. in 2011.

### A.    Guilt Phase

At trial, C.B. testified she first noticed signs of dementia in Gloria C. around 2011.  As Gloria C.'s mental condition worsened in 2015, C.B. became increasingly concerned and kept Gloria C.'s debit card in her bedroom drawer.  C.B. and E.B. testified that defendant had been living with them in South San Francisco, but in 2016 was "going back and forth" between South San Francisco and Los Angeles.  E.B. testified that in May or June 2016, he visited defendant in the Los Angeles area, specifically in the city of Bellflower.

C.B. testified that in May 2016, she received a call from a social worker who told her that someone was using Gloria C.'s debit card.  C.B. then searched for the debit card in her bedroom drawer and realized it was missing.  The only persons who had access to C.B.'s room were C.B., E.B., and defendant.

---

[2]     We focus our attention on the evidence and background facts relevant to defendant's claim of instructional error regarding identity theft under section 368, subdivision (d).

[3]     Pursuant to the California Rules of Court, rule 8.90, governing "Privacy in opinions," we refer to the victim and certain witnesses by their first names and last initials or by initials only.

Gloria C.'s bank statements from February to July 2016 were admitted into evidence. South San Francisco peace officer Kathleen Walsh testified regarding those records, and identified 120 "suspicious" transactions. In particular, 109 of those transactions took place in Southern California and were suspicious because Gloria C. lived in South San Francisco. Walsh testified that transactions took place at restaurants, electronic stores, phone stores, and a smoke shop in and around South San Francisco.

As part of the prosecution's case, Officer Walsh testified concerning two back-to-back withdrawals from Gloria C.'s bank account at an ATM in Bellflower on May 11, 2016. Walsh testified that $200 was withdrawn in the first transaction and $500 was withdrawn in the second transaction, totaling $700. Surveillance footage and photographs from the Bellflower ATM machine taken on May 11, 2016 were admitted into evidence. Walsh testified that she recognized defendant as the individual depicted in the surveillance photographs and that he appeared to be alone. With regard to the balance of the 120 suspicious transactions, the prosecution introduced circumstantial evidence that defendant lived in the general area where the suspicious transactions occurred; that he was "going back and forth" to Los Angeles since January 2016; and that he smoked but neither Gloria C. nor C.B. smoked (though E.B. did smoke). Walsh testified that the total amount taken from Gloria C.'s bank account as a result of the suspicious transactions was $8,710.44.

Gloria C. was unavailable to testify at trial because of her dementia. Gloria C.'s treating physician and two neuropsychologists who had evaluated her testified that her dementia was severe.

3

## B. Jury Instructions

The trial court instructed the jury, pursuant to CALCRIM No. 1861, that defendant was being "prosecuted for theft from an elder under 2 theories: (1) theft by larceny; and (2) identity theft." The instruction stated that "[e]ach theory of theft has different requirements" and explained that, to find defendant guilty, the jury must agree that "the People have proved that the defendant committed theft under at least one theory" but "all of you do not have to agree on the same theory."

The trial court then instructed the jury on the elements of larceny and identity theft using CALCRIM No. 1800 and CALCRIM No. 2040, respectively. As given, CALCRIM No. 1800 informed the jury that the People must prove the following four elements for theft by larceny: (1) defendant took possession of property owned by someone else; (2) defendant took the property without the owner's consent; (3) when defendant took the property he intended to deprive the owner of it permanently; and (4) defendant moved the property and kept it for any period of time. CALCRIM No. 2040 instructed that the People must prove the following three elements for identify theft: (1) defendant willfully obtained someone else's personal identifying information; (2) defendant willfully used that information for an unlawful purpose; and (3) defendant used the information without the consent of the person whose identifying information he was using.

The trial court next instructed the jury on the elements of theft from an elder under section 368(d), starting with CALCRIM No. 1807. The standard CALCRIM No. 1807 instruction states that the People must prove four elements for felony elder theft under section 368(d) based on the theories of theft by larceny or identity theft: (1) "The defendant committed theft or identity theft"; (2) "The property taken or personal identifying information

4

used was owned by or that of an elder"; (3) "The property, goods, or services obtained was worth more than $950"; and (4) "The defendant knew or reasonably should have known that the owner of the property or person to whom the identifying information belonged was an elder." Here, however, the trial court modified the third element of CALCRIM No. 1807 by adding a parenthetical phrase that "this element only applies to theft from an elder adult based on the theory of theft by larceny[.]"

The trial court explained its rationale for the instructional modification at a hearing concerning jury instruction issues. Citing *People v. Sanders* (2018) 22 Cal.App.5th 397, the court observed that identity theft is based on a violation of section 530.5, and that an offense under section 530.5 is not subject to a minimum dollar threshold. In viewing sections 368(d) and 530.5 together, the court concluded the instruction's "worth more than $950" requirement could not apply to identity theft because it would lead to the "absurd result" that identity theft committed against a 40-year-old person could be a felony under section 530.5 regardless of value, whereas identity theft committed against an elder under section 368(d) could be a felony only if an amount of more than $950 was proven. Defense counsel objected to the instruction as modified.

## C. Closing Arguments

In her closing argument, the prosecutor argued "there's two different ways the defendant can be guilty of what's charged. You have to find that the defendant committed theft by larceny, which we'll talk about in a second, or identity theft, two different crimes." After explaining that theft by larceny requires "[t]he property, goods, or services obtained was worth more than 950," she cautioned the jury that "that element only applies to theft by larceny." She proceeded to repeat that larceny is "the only one that requires

5

that it be more than 950" and then added, "[i]dentity theft doesn't." For identity theft, she emphasized, "I don't even need to prove that he got anything for it."

In wrapping up, the prosecutor pivoted to how the jury might convict defendant for theft from an elder under section 368: "So I would submit to you that both theories here apply. You don't have to each agree, Oh, yes, all 12 of us say identity theft or all 12 of us say theft by larceny. You all just have to agree that a theft took place; and of what kind, it's up to you to decide."

During her closing argument, defendant's counsel contended the evidence fell short of establishing defendant's guilt of the charged felony offense because the prosecutor had not proven a violation of section 368(d) in excess of the $950 threshold. Specifically, while acknowledging the surveillance footage at the Bellflower ATM confirmed that defendant made withdrawals of $200 and $500, counsel pointedly remarked, "That's less than $950." She then argued that there was only circumstantial evidence regarding all the other purportedly suspicious transactions, and that there was no excuse for the People having neglected to investigate or obtain any surveillance footage of any of these other transactions. Defense counsel also questioned why Officer Walsh's report did not support her testimony that she had in fact investigated certain places and ascertained their surveillance records were gone. Defense counsel then argued these and other deficiencies raised a reasonable doubt as to defendant's responsibility for those other transactions.

On rebuttal, the prosecutor reminded the jurors that the monetary threshold requiring a value of more than $950 did not apply to identity theft under section 368 and urged them to find defendant guilty of felony theft

from an elder even if they were to find defendant guilty only of the two May 11 ATM withdrawals. As the transcript reflects, the prosecutor argued: "[L]et's say that you find 'I only think that he did this. I only think that he took $500 and $200 from these withdrawals.' He's still guilty of theft from an elder because he used Gloria [C.]'s personal identifying information."

### D. Verdict

The jury found defendant guilty as charged. The verdict stated, in full: "WE, THE JURY IN THE ABOVE-ENTITLED CAUSE, find the defendant, Jedevan Baratang, **GUILTY**, of the crime of theft from Gloria [C.], an elder adult, in violation of Penal Code Section 368(d), a felony, as alleged in Count 1 of the Information filed herein."

### E. Sentencing

The trial court suspended imposition of sentence and placed defendant on three years of supervised probation, conditioned on defendant serving nine months in county jail.

This appeal followed.

### DISCUSSION

Defendant argues his conviction must be reversed because, among other things, the trial court committed prejudicial error in modifying the third element of CALCRIM No. 1807 to restrict its application of the "worth more than $950" threshold to the theory of theft by larceny. He argues the modification disregarded the plain language of section 368, subdivision(d)(1) (section 368(d)(1)) and improperly instructed that the jurors could convict him of felony theft from an elder under an identity theft theory regardless of the value of the property taken or obtained.

"We review challenges to the propriety of jury instructions in correctly stating the relevant law under the de novo standard of review." (*Collins v.*

7

*Navistar, Inc.* (2013) 214 Cal.App.4th 1486, 1500.) The initial step of our inquiry is to determine whether the trial court's modification was instructional error. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 573.) If we determine there was an instructional error, we then assess whether a reversal is warranted because the erroneous instruction was prejudicial. (*Id.* at pp. 573–574.)

###### A. Error in Modifying CALCRIM No. 1807

In ascertaining whether the trial court's modification of CALCRIM No. 1807 was in error, we begin with a review of the statutory framework for theft from an elder pursuant to section 368(d), and its inclusion of identity theft violations proscribed in section 530.5.

Section 368(d) identifies the various theories under which a defendant may commit theft from an elder. Under section 368(d), an offense is committed by one "who is not a caretaker who violates any provision of law proscribing theft, embezzlement, forgery, or fraud, or who violates Section 530.5 proscribing identity theft, with respect to the property or personal identifying information of an elder or a dependent adult[.]" Section 368(d)(1) provides that a violation is punishable as either a misdemeanor or a felony "when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value exceeding nine hundred fifty dollars ($950)." That is, if the value taken or obtained exceeds $950, the offense is a wobbler. (*People v. Soto* (2018) 23 Cal.App.5th 813, 819 (*Soto*).) If the value taken or obtained is $950 or less, it is a misdemeanor. (*Ibid.*)

Section 530.5, subdivision (a), states that one is guilty of identity theft when one "willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical

8

information without the consent of that person[.]" Section 530.5 is also punishable as a misdemeanor or a felony. (*People v. Weir* (2019) 33 Cal.App.5th 868, 875.) The statute does not, however, contain any minimum dollar requirement for punishment as a felony.

As a preliminary matter, we agree with the People that section 530.5 has been viewed as a nontheft offense that has no minimum dollar threshold. As the California Supreme Court recently explained, a defendant's felony convictions for identity theft under section 530.5 are not theft offenses and thus cannot be reduced to misdemeanors under Proposition 47.[4] (*People v. Jimenez* (2020) 9 Cal.5th 53, 65.)

Nonetheless, we see merit in defendant's contention that the interpretation of identity theft under section 530.5 does not answer the question of whether a felony violation of section 368(d) based on identity theft is subject to section 368(d)(1)'s requirement that the value of the items taken or obtained be in excess of $950. The parties have not offered, nor have we been able to identify, any case law directly on this question.[5]

---

[4] Proposition 47 "reduced the punishment for certain theft- and drug-related offenses, making them punishable as misdemeanors rather than felonies. To that end, Proposition 47 amended or added several statutory provisions, including new . . . section 490.2, which provides that 'obtaining any property by theft' is petty theft and is to be punished as a misdemeanor if the value of the property taken is $950 or less." (*People v. Page* (2017) 3 Cal.5th 1175, 1179.)

[5] Defendant cites *Soto*, *supra*, 23 Cal.App.5th 813, as authority supporting application of section 368(d)(1)'s monetary requirement to a section 368(d) violation based on identity theft. In *Soto*, the issue was whether a defendant's elder theft conviction under section 368 was eligible for reclassification under Proposition 47. (*Soto*, at p. 816.) *Soto* concluded that the conviction was outside the scope of Proposition 47 because a section 368(d) violation is a "theft-plus" offense, requiring two additional elements beyond ordinary theft: (1) a victim who is an elder or dependent adult, and

9

As this is a matter of statutory interpretation subject to our de novo review, we start with the terms of section 368(d), affording the words their " 'usual and ordinary meaning' " and viewing them in their statutory context "in order to effectuate the law's purpose." (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387.) Section 368(d)(1) states, in straightforward terms, that a violation of section 368(d) is punishable as a felony "when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value exceeding nine hundred fifty dollars ($950)." Based on the plain language of the statute, we conclude the $950 threshold applies to a felony violation of section 368(d) based on identity theft.

The legislative history reinforces our interpretation of section 368. When violations of section 530.5 were added to section 368 in 2003, the Legislature also added the words "goods" and "services" to the list of the things taken and added the word "obtained" so that a violation of section 368 would be punishable as a felony "when the money, labor, *goods, services,* or real or personal property taken *or obtained* is of a value exceeding four hundred fifty dollars ($400)." (Former §368(d), as amended by Stats. 2003, ch. 543, § 1, p. 4171 (Assem. Bill No. 1131), italics added.)[6]

In adopting these amendments, the Legislature evidently agreed with the sponsor of the amendments that addition of the words "good," "services," and "obtained" was a "necessary change . . . in the language referring to the value of what is taken." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1131 (2003–2004 Reg. Sess.) as amended Apr. 29, 2003, p. 9; see Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill

---

(2) a defendant who knew or should have known that fact. (*Id.* at p. 824.) *Soto* did not touch upon the issue here.

[6] Section 368's monetary threshold was increased from $400 to $950 in 2010. (Stats. 2009–2010, 3rd Ex. Sess., ch. 28, § 9.)

No. 1131 (2003–2004 Reg. Sess.) as amended Sept. 4, 2003, p. 4.) Specifically, such amendments were necessary because "[i]n an identity theft case, for example, there may be no tangible item actually taken from the elderly victim, yet the value of the goods and services obtained as a result of the identity theft could easily be over $400. This language should be clarified to [avoid]⁷ frivolous arguments about the value of identifying information." (*Ibid*.) In short, the legislative history demonstrates that, consistent with the plain language of section 368(d)(1), the language of the statutory dollar threshold was amended to account for the inclusion of identity theft as an underlying violation. Consequently, there appears no doubt that the statutory dollar threshold applies to felony theft from an elder based on an identity theft theory.

We observe our interpretation of section 368(d)(1) is also consistent with the direction in the standard CALCRIM No. 1807 instruction. Before stating the third element and its "worth more than $950" requirement, CALCRIM No. 1807 directs: *"Do not give element 3 in misdemeanor cases where the value is $950 or less."* The instruction provides no exemption from element 3 for a felony section 368(d) violation based on identity theft.

Finally, our plain meaning interpretation does not lead to an absurd result. Section 368(d) does not contemplate that a violation of section 530.5, in and of itself, constitutes theft from an elder in violation of section 368(d). By its terms, section 368(d) requires proof of two other elements that are not included in section 530.5: (1) the victim is an elder or dependent adult, and (2) the defendant knows or should have known that the victim is an elder or a

---

[7] We note the legislative analyses used the word "a" in place of the word "avoid" which we have indicated in brackets. Viewed in context, the word "a" appears to be a typographical error that makes no sense, while the word "avoid" appears both reasonable and logical given the balance of the sentence.

dependent adult. (See *Soto*, *supra*, 23 Cal.App.5th at p. 824.) The additional elements of proof in section 368(d) are also consistent with its penalties: a felony offense under 368(d) is punishable by imprisonment for up to four years, whereas a felony offense under section 530.5 is punishable by imprisonment for up to three years. Moreover, not all violations of section 530.5 are felonies; like section 368(d)(1), section 530.5 specifies that a violation of its terms is punishable as either a misdemeanor or a felony, depending on the circumstances of the crime. (§ 530.5.) There is nothing absurd in viewing section 368(d)(1) as criminalizing and punishing identity theft from an elder with proof of elements that extend beyond those necessary to establish an identity theft under section 530.5.

In sum, we conclude the $950 requirement in section 368(d)(1) applies to a felony violation of section 368(d) based on identity theft. Accordingly, the trial court erred in modifying CALCRIM No. 1807 to instruct otherwise. We turn next to the question of whether the error was prejudicial.

## B. Prejudice in Modifying CALCRIM No. 1807

When a trial court instructed a jury on two theories of guilt, one of which was legally correct and one legally incorrect, we apply the standard set forth in *People v. Aledamat* (2019) 8 Cal.5th 1 (*Aledamat*) to determine whether the instructional error was prejudicial. In *Aledamat*, the jury found the defendant guilty of assault with a deadly weapon after being instructed that "a weapon could be *either* inherently deadly *or* deadly in the way defendant used it." (*Aledamat*, *supra*, 8 Cal.5th at p. 6.) The California Supreme Court first analyzed whether the instruction presented the jury with a " '*factually* inadequate theory' " (incorrect only because the evidence does not support it) or a " '*legally* inadequate theory' " (incorrect because it is contrary to law). (*Id.* at p. 7; see *id.* at p. 8 [" 'A legal error is an incorrect

12

statement of law, whereas a factual error is an otherwise valid legal theory that is not supported by the facts or evidence in a case.' "].) Because the weapon at issue, a boxcutter, was not an inherently deadly weapon as a matter of law (*id*. at p. 6), *Aledamat* concluded the trial court presented the jury with a legally erroneous theory by instructing the jury it could find defendant guilty of assault with a deadly weapon if the box cutter was *either* inherently deadly *or* deadly as used (*id*. at p. 7).

*Aledamat* held that, when a legally incorrect jury instruction on an alternative theory of guilt is at issue, "[t]he reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*Aledamat*, *supra*, 8 Cal.5th at p. 13 [applying *Chapman v. California* (1967) 386 U.S. 18].) The question is not whether we believe it clear beyond a reasonable doubt that the defendant is guilty under the legally correct theory, but whether we can say, beyond a reasonable doubt, that the legally incorrect jury instruction did not taint the actual jury verdict. (*People v. Thompkins* (2020) 50 Cal.App.5th 365, 399.) It is the People's burden to show that the jury relied on the legally valid theory in convicting the defendant. (See *In re Martinez* (2017) 3 Cal.5th 1216, 1227 (*Martinez*).)

*Aledamat* provides guidance in determining whether an instructional error was harmless beyond reasonable doubt. (*Aledamat*, *supra*, 8 Cal.5th at pp. 13–15.) In concluding the legally erroneous instruction at issue was harmless, *Aledamat* observed the jury had been instructed to "consider all of the surrounding circumstances" in determining whether an object is a deadly weapon, making it unlikely that the jury would simply view the box cutter as inherently deadly. (*Id*. at p. 14.) Moreover, the parties never argued there

13

were two separate ways the jury could find the box cutter to have been a deadly weapon.  (*Ibid.*)

*Aledamat* also cited the test from Justice Scalia's concurring opinion in *California v. Roy* (1996) 519 U.S. 2 at page 7 as one "nonexclusive" way that error can be found harmless beyond a reasonable doubt.  (*Aledamat, supra*, 8 Cal.5th at p. 14.)  Under that test, "[t]he reviewing court examines what the jury necessarily did find and asks whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well."  (*Id.* at p. 15.)  Noting the instructions that were given, *Aledamat* concluded the jury necessarily found that the defendant (1) "did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force"; (2) "was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone"; and (3) "had the present ability to apply force with a deadly weapon to a person." (*Ibid.*)  Reasoning that " '[n]o reasonable jury that made all of these findings could have failed to find' " that the defendant used the box cutter in a deadly way, *Aledamat* concluded the error was harmless beyond a reasonable doubt. (*Ibid.*)

Unlike the situation in *Aledamat*, we cannot "rule out a reasonable possibility" that the jury relied on the identity theft theory to support a felony violation of section 368(d).  (*Martinez, supra*, 3 Cal.5th at p. 1226.)  The jury was instructed that "all of you do not have to agree on the same theory," so it is possible that at least some jurors found defendant guilty under the identity theory.  The jury did not submit any questions, and the verdict did not include any findings regarding a particular theory, or particular transactions, or the dollar value of the property allegedly taken.

Moreover, prejudicial error has been found where a prosecutor argues the legally invalid theory at length in closing arguments. (*Martinez, supra*, 3 Cal.5th at pp. 1226–1227.) Not only did the prosecutor here refer to the two alternative theories of guilt in her closing argument, but she specifically and repeatedly told the jury the monetary value requirement applied only to theft by larceny and not to identify theft. And significantly, to counter defense counsel's focus on the circumstantial nature of the evidence on all but two of the suspicious transactions and the failure of the investigating officer's report to document the officer's claim in court that she in fact investigated but could not obtain surveillance video from any of the nearly 50 stores where suspicious transactions allegedly occurred, the prosecutor stated: "[L]et's say that you find 'I only think that he did this. I only think that he took $500 and $200 from these withdrawals.' He's still guilty of theft from an elder because he used Gloria [C.]'s personal identifying information." In making such arguments, the prosecutor invited the jurors to find defendant guilty of felony theft from an elder without proof that section 368(d)(1)'s "exceeding [$950]" threshold had been met, consistent with the incorrectly modified CALCRIM No. 1807 instruction. When these circumstances are considered in conjunction with the instruction given to the jurors that unanimity on a theft theory was not required, it appears reasonably possible that one or more jurors found defendant guilty of felony theft from an elder under the identity theft theory based solely on the two Bellflower ATM withdrawals totaling $700.

In sum, the People have not shown beyond a reasonable doubt that the jury relied on a legally valid theory in convicting defendant of felony theft from an elder. (See *Martinez, supra*, 3 Cal.5th at p. 1227.)

15

**DISPOSITION**

The judgment is reversed.[8]

---

[8] In light of our reversal, we need not and do not address defendant's other contentions that (1) the trial court should have instructed the jury, sua sponte, on a mistake-of-fact defense; (2) his trial counsel provided ineffective assistance by failing to object to hearsay; and (3) certain conditions of his probation should be stricken as unconstitutionally overbroad.

_____

FUJISAKI, J.

We concur.

_____

SIGGINS,  P.J.

_____

PETROU, J.

(A155108)

17

San Mateo County Superior Court

Jeffrey R. Finigan, Judge.

Paula Rudman and Nathaniel Miller under appointment by the Court of Appeal; Law Office of Emily K. Andrews and Emily K. Andrews for Defendant and Appellant.

Xavier Becerra, Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Basil Williams and Allen Crown Deputy Attorney General for Plaintiff and Respondent