Filed 12/10/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> ULYSSES GONZALEZ, <br><br>     Defendant and Appellant. | H050752 <br> (Santa Clara County <br> Super. Ct. No. C1232508) |

In 2013, defendant Ulysses Gonzalez entered an open plea of no contest to two charges involving domestic violence against two different victims (Pen. Code, § 273.5, subd. (a).)[1]  He also admitted to an enhancement for personally inflicting great bodily injury (§ 12022.7, subd. (e)), as well as various prior convictions, including two prior strike convictions (§§ 667, subds. (b) – (i), 1170.12) and one prior conviction that resulted in a prison term (§ 667.5, subd. (b).)  The trial court sentenced Gonzalez to a total term of 15 years in state prison.

In 2022, following the passage of Senate Bill No. 483 (2021-2022 Reg. Sess.) (Senate Bill 483), Gonzalez requested that he be resentenced because his section 667.5, subdivision (b) enhancement was now legally invalid.  He also requested that his sentence on one count be reduced to the middle term.  The trial court struck the section 667.5, subdivision (b) enhancement and reduced Gonzalez's sentence by one year, but denied the request to further reduce his sentence.

---

[1] Undesignated statutory references are to the Penal Code.

On appeal, Gonzalez claims that the trial court erred in refusing to reduce his sentence as contemplated under section 1172.75 and section 1170, subdivision (b).

For the reasons explained below, we reverse the trial court's order and remand for the trial court to conduct a resentencing applying the requirements of amended section 1170, subdivision (b).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[2]

#### 1.  Incident Against V.C.[3] (Count 1)

On March 6, 2012, San Jose Police Officers responded to a call from V.C.'s mother, who reported that V.C. had told her over the phone that V.C.'s boyfriend had "beaten her up."  The officers located V.C. at an intersection in San Jose with a cut on the top of her nose and blood covering the front of her jacket.  V.C. was very resistant to speak with the officers and kept threatening to "take off running."  She would not tell the officers what happened or where she and her boyfriend lived.  V.C.'s mother subsequently arrived on the scene and convinced V.C. to speak with the officers.

V.C. reported that she and her boyfriend, Gonzalez, had been in an on-and-off relationship for approximately six years and were currently living together.  On the day of the incident, V.C. was on the phone with her mother when Gonzalez came home and demanded that she give him $80.  When V.C. told Gonzalez she had already given the money to her sister, Gonzalez called her a "bitch" and yelled at her for giving the money away.  Gonzalez proceeded to walk out, then returned, said "you know what bitch," and punched her in the nose with a closed fist.  V.C. fell to the ground and dropped her

---

[2] The following facts are derived from the police reports and probation reports, which are also quoted by Gonzalez in his opening brief.

[3] We refer to the victims in the proceedings by their initials only to protect personal privacy interests pursuant to California Rules of Court, rule 8.90(b)(10) and (11).

2

phone, while Gonzalez went outside. V.C. indicated she was very disoriented and crying, and could hear Gonzalez outside mocking her for crying.

Officers observed that in addition to the cut on the top of V.C.'s nose, her nose was bruised and swollen. V.C. was taken to the hospital by her mother, where she was diagnosed with a broken nose that required surgery. V.C. also sustained two small lacerations to her nose, and her eyes were swollen and bruised.

V.C. later reported that while she was being treated for her injuries at the scene, Gonzalez sent her a text stating "[d]on't [f]uck with the MOB." V.C. indicated that Gonzalez was a member of the gang "Varrio Mas Chingon."

### 2. Incident Against C.A. (Count 2)

On September 22, 2012, C.A., who had previously dated Gonzalez and was the mother of his child, was at a barbecue in San Jose when Gonzalez and his current girlfriend arrived. Gonzalez and his girlfriend began to threaten C.A. He punched C.A. in the nose, causing her to fall to the ground. Gonzalez continued to punch C.A. in the face, back, and ribs multiple times with a closed first until C.A.'s brothers were able to break up the fight long enough for C.A. to run away. C.A. sustained a swollen nose and complained of pain to her jaw, ribs, and back. C.A. was treated at a local medical center and released.

### B. Procedural Background

### 1. Charges, Plea, and Original Sentence

On August 28, 2013, the trial court granted the Santa Clara County District Attorney's Office's motion to file a consolidated felony complaint charging Gonzalez with inflicting corporal injury on a cohabitant, V.C. (§ 273.5, subd. (a); count 1) and inflicting corporal injury on the mother of Gonzalez's child, C.A. (§ 273.5, subd. (a); count 2). The complaint also alleged that in the commission of the offense against V.C., Gonzalez personally inflicted great bodily injury upon V.C. (§ 12022.7, subd. (e)) The complaint further alleged that Gonzalez had previously been convicted of robbery

3

(§§ 211-212.5, subd. (c)) and attempted robbery (§§ 664/211-212.5, subd. (c)), which constituted two prior serious or violent felonies pursuant to sections 667, subdivisions (b) through (i) and 1170.12. It was also alleged that Gonzalez served a prison term for his prior conviction of robbery pursuant to section 667.5, subdivision (b).

On November 20, 2013, Gonzalez entered an open plea of no contest to both counts, admitted the great bodily injury enhancement, and admitted all of the allegations regarding his prior convictions. Because count 1 qualified as a "strike," Gonzalez acknowledged that he understood that admitting to two or more strike convictions subjected him to a mandatory term of life in prison.

On March 26, 2014, Gonzalez's trial counsel filed a *Romero*[4] motion to strike his prior strike offenses. Counsel argued that the court should exercise its discretion to strike one or more of Gonzalez's prior strike offenses because his criminal history was primarily due to his use of alcohol and traumatic childhood. The People opposed the motion, noting the violent nature of the current charges involving two different victims, the egregious nature of Gonzalez's strike offenses, and Gonzalez's significant criminal history.

On April 17, 2014, the trial court granted the *Romero* motion and struck two of Gonzalez's three strike priors.[5] The court sentenced Gonzalez to the term of eight years (upper term of four years doubled) for corporal injury against V.C. (count 1) and a consecutive term of two years (one-third the middle term of three years doubled) for corporal injury against C.A. (count 2). The court indicated that it was appropriate to

---

[4] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

[5] During the sentencing hearing, Gonzalez's counsel informed the court that while Gonzalez admitted to two strike prior convictions during his change in plea, probation subsequently indicated that Gonzalez had a third prior strike conviction, which he admitted to on a later date. Accordingly, in striking two of Gonzalez's priors, the court still sentenced him on a single strike prior.

make the terms consecutive because the charges involved two different victims. The court also imposed a middle term of four years consecutive for the great bodily injury enhancement attached to count 1 (§ 12022.7, subd. (e)). Finally, the court imposed a consecutive one-year term for Gonzalez's prior conviction of robbery, which had resulted in a prison term. (§ 667.5, subd. (b).) Gonzalez's total sentence amounted to 15 years in state prison.

### 2. Resentencing Proceedings

### a. Petition

On February 18, 2022, Gonzalez's counsel filed a petition with the trial court asking that his sentence be recalled, and he be resentenced following the passage of Senate Bill 483.[6]

On September 13, 2022, Gonzalez's counsel filed an augmented petition for resentencing pursuant to section 1172.75. In the petition, Gonzalez asked that the trial court dismiss the section 667.5, subdivision (b) enhancement, which was now legally invalid, and resentence him according to current sentencing law. In addition, Gonzalez asked that pursuant to sections 1385, subdivision (c)(2)(E)[7], and 1172.75, subdivision

---

[6] Effective January 1, 2020, the Legislature passed Senate Bill No. 136 (2019-2020 Reg. Sess.), which amended section 667.5, subdivision (b) to limit prior prison term enhancements to sexually violent offenses only. (Stats. 2019, ch. 590, § 1.) The Legislature subsequently passed Senate Bill 483, which made this change retroactive by adding section 1171.1 (Stats. 2021, ch. 728, § 3), which was later renumbered as section 1172.75. (Stats. 2022, ch. 58, § 12.) Under section 1172.75, "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5," except for enhancements for certain sexually violent offenses, "is legally invalid." (§ 1172.75, subd. (a).) Once the trial court has confirmed that a defendant's current judgment includes a prior prison term enhancement that is now legally invalid, the trial court "shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).)

[7] While counsel mentioned this code section on the first page of the augmented petition, she made no further reference of it in her briefing or at the resentencing hearing. Gonzalez also does not discuss this section in his opening brief. We therefore will not consider if this section was applicable to Gonzalez's resentencing.

(d)(3)[8], the trial court consider various post-conviction factors that would justify resentencing him to the middle term on count 1.  The petition pointed to Gonzalez's "great strides" towards rehabilitation while in prison, including employment training, self-help programming, and further education.  While Gonzalez acknowledged that his disciplinary history in prison was "not perfect" and included one violent incident, he asserted that the rule violations did not render him a risk to public safety, as many of them only involved possession of cannabis or a cellphone.  Gonzalez also noted that that he left the gang lifestyle in approximately 2019.  Lastly, Gonzalez argued that he had a supportive network who would assist him upon his release and help him adhere to his reentry and sobriety plans.

In opposition, the People submitted on the dismissal of the prison prior pursuant to section 1172.75 and indicated that they would introduce a copy of Gonzalez's certified arrest record at the hearing for the court's consideration.[9]  However, the People argued that Gonzalez's sentence should not be further reduced because he had already received "a huge benefit" in his initial sentence from the court by granting his *Romero* motion and striking two of his prior strike offenses.[10]  The People contended that in examining post-conviction factors, Gonzalez's rule violations in prison demonstrated that his behavior

---

[8] Although Gonzalez referenced the prior version of the statute (§ 1171.1) in his petition, we shall refer to the current version of the statute (§ 1172.75) for consistency.

[9] The record does not reflect that this document was provided to the court at the resentencing hearing.

[10] Notably, the People spent significant time in their written opposition discussing former section 1170, subdivision (d)(1), which the Legislature later amended in January 2022 to section 1170.03 and then renumbered it as section 1172.1. (Stats. 2022, ch. 58, § 9.)  Former section 1170, subdivision (d)(1) involves recalling and resentencing a defendant following a recommendation from the Secretary of the California Department of Corrections and Rehabilitation (CDCR) to do so based on a change in the law.  As the record does not reflect CDCR made such a recommendation in Gonzalez's case, former section 1170, subdivision (d)(1), and the current amended version as it exists in section 1172.1, was not applicable in Gonzalez's case.

6

was "violent and deceptive." In particular, the People noted that Gonzalez, along with a fellow inmate, had brutally assaulted another inmate, refused commands from correctional officers to stop, and only stopped after an officer sprayed pepper spray in his face. The People further indicated that Gonzalez had been part of a prison gang as recently as 2020 and his repeated rule violations, regardless of their nature, reflected an overall inability to follow basic rules. The People concluded that Gonzalez's post-conviction behavior demonstrated "no circumstances [had] changed" such that his continued incarceration was in the interests of justice.

### 3. *Resentencing Proceedings and Order*

On December 21, 2022, the trial court held a hearing on Gonzalez's resentencing petition. At the hearing, Gonzalez provided further information to the court about the steps he had taken to address his anger issues and alcoholism, including various courses on anger management and domestic violence. Gonzalez also spoke about witnessing his father abuse his mother while growing up, thus making the cycle of violence normal for him. Gonzalez expressed remorse for his actions, and indicated that he planned to take affirmative steps once released to prevent an alcohol relapse and avoid triggers for his anger. Finally, Gonzalez confirmed he was no longer a gang member and outlined steps he would take once released to avoid contact with other gang members.

The trial court dismissed the section 667.5, subdivision (b) enhancement pursuant to section 1172.75. However, the trial court declined to reduce the sentence further and re-imposed the same upper term on count 1. The court noted that there were six aggravating factors[11] cited by probation in support of Gonzalez's original upper term sentence on count 1, including: (1) the great bodily harm enhancement; (2) the violent nature of Gonzalez's conduct; (3) the numerous and increasingly violent nature of

---

[11] Although not indicated by the court in its ruling, all of the factors cited are listed as circumstances in aggravation under California Rules of Court, rule 4.421.

7

Gonzalez's prior convictions; (4) Gonzalez's prior prison term; (5) the crime was committed while Gonzalez was on parole; and (6) Gonzalez's performance on parole was unsatisfactory.  While the court identified one mitigating factor, namely, Gonzalez's voluntary acknowledgment of wrongdoing early in the proceedings, it determined that Gonzalez's conduct in prison "[did] not make [the court] want to give him any less than what the judge originally imposed other than striking the -- what used to be a one-year mandatory enhancement."  The court subsequently reduced Gonzalez's sentence by one year to account for the dismissal of the section 667.5, subdivision (b) enhancement and resentenced Gonzalez to a total of 14 years in state prison.

Gonzalez timely appealed.

## II.   DISCUSSION

Gonzalez argues that the trial court erred in refusing to reduce his sentence as required under section 1172.75, subdivision (d) because it failed to properly apply changes in the law that would reduce his sentence to either the middle or lower term, namely, the revised version of section 1170, subdivision (b).[12]  Gonzalez specifically argues that: (1) the trial court did not follow the requirements of section 1170, subdivision (b)(2) for imposing a sentence above the presumptive middle term; and (2) the trial court was required to reduce his sentence to the lower term pursuant to

_____

[12] As the record reflects that Gonzalez's counsel initiated a petition for resentencing, which is not authorized under section 1172.75 (see *People v. Burgess* (2022) 86 Cal.App.5th 375, 380-385), we requested supplemental briefing from the parties to determine if the trial court had fundamental jurisdiction to address Gonzalez's resentencing petition.  In response, Gonzalez provided a list prepared by the CDCR dated June 16, 2022, which identified him as eligible for resentencing under section 1172.75.  Accordingly, we find that the court had jurisdiction to resentence Gonzalez despite him improperly petitioning the court for relief.  (See *People v. Cota* (2023) 97 Cal.App.5th 318, 330-333 [finding that the court still had jurisdiction to resentence a defendant who improperly filed his own petition under section 1172.75 once the CDCR subsequently identified the defendant as eligible].)

section 1170, subdivision (b)(6), based on the evidence presented of his childhood trauma.

### A. *Legal Principles and Standard of Review*

In general, we review a trial court's sentencing decisions for abuse of discretion. (*People v. Panozo* (2021) 59 Cal.App.5th 825, 837.) "An abuse of discretion is found where the court 'relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.' [Citation.]" (*Ibid.*) " 'A failure to exercise discretion may also constitute an abuse of discretion.' [Citation.]" (*Ibid.*)

In the instant matter, Gonzalez argues that our review should be de novo because it requires us to analyze the "interaction" between sections 1170 and 1172.75. We agree. In reviewing matters of statutory interpretation, such as the scope of a statutory scheme, we review the trial court's decision de novo. (*People v. Jimenez* (2020) 9 Cal.5th 53, 61.) In so doing, "[w]e look first to ' "the language of the statute, affording the words their ordinary and usual meaning and viewing them in their statutory context." ' [Citation.] We must construe statutory language in context, bearing in mind the statutory purpose, and giving effect to the intended purpose of an initiative's provisions. [Citations.]" (*Ibid.*)

Section 1172.75 provides that once the trial court has confirmed that a defendant's current judgment includes a prior prison term enhancement that is now legally invalid, the court "shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) In so doing, the trial court is directed to follow specific instructions while resentencing. (§ 1172.75, subd. (d).) For example, section 1172.75, subdivision (d)(1) provides that "[r]esentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed." In addition, when resentencing, the court

9

"shall apply . . . any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).)

One such change in the law is the revised section 1170, which governs sentencing in felony cases. When Gonzalez was originally sentenced in 2014, section 1170 provided that the choice between sentencing a defendant to the lower, middle, or upper term "shall rest within the sound discretion of the court." (Former § 1170, subd. (b), as amended by Stats. 2011-2012, ch. 12, § 12.4.) Effective January 1, 2022, Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) amended section 1170 to make the middle term the presumptive sentence. (*People v. Flores* (2022) 75 Cal.App.5th 495, 500; see § 1170, subd. (b)(1).)

Section 1170, subdivision (b)(2) now provides that the trial court may impose a sentence exceeding the middle term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term." (§ 1170, subd. (b)(2).) In addition, "the facts underlying those circumstances [must] have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Ibid.*)

Section 1170, subdivision (b)(6) requires trial courts to impose the lower term in certain situations unless "the court finds that the aggravating circumstances outweigh the mitigating circumstances." (§ 1170, subd. (b)(6).) For example, the lower term must be imposed if certain enumerated circumstances constituted a "contributing factor" in the commission of an offense, including if: "(A) The person has experienced psychological, physical, or childhood trauma, including but not limited to, abuse, neglect, exploitation, or sexual violence." (*Ibid.*)

Section 1172.75 also provides for consideration of other factors during resentencing. "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while

10

incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."  (§ 1172.75, subd. (d)(3).)

Additionally, section 1172.75, subsection (d)(4) states "[u]nless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1172.75, subd. (d)(4).)

### B.  Analysis

#### 1.  Forfeiture

As a threshold matter, the Attorney General claims that Gonzalez failed to raise his argument under section 1170, subdivision (b)(6), regarding imposition of the lower term, and therefore he has forfeited this claim on appeal.  We similarly note that Gonzalez made no mention of either section 1170, subdivision (b)(2) or section 1172.75, subdivision (d)(4) in the trial court; indeed, he only suggested that his sentence be reduced to the middle term pursuant to section 1172.75, subdivision (d)(3) based on post-conviction factors.  Therefore, we requested supplemental briefing from the parties on the question of whether Gonzalez forfeited his claims for imposition of a lower term as contemplated under section 1170, subdivisions (b)(2) and (b)(6).

Gonzalez acknowledges that his trial counsel did not refer to section 1170 when requesting a reduction to the middle term in either his petition for resentencing or during the resentencing hearing.  However, he argues that this court should still exercise its discretion to reach the merits of his claim because the record contains substantial evidence regarding Gonzalez's childhood trauma and early exposure to violence, and he affirmatively requested a reduction in his sentence in his petition.  Gonzalez claims that

11

this circumstance differs from other cases where the appellate court found forfeiture because in those cases, trial counsel never objected to the upper term or affirmatively requested a reduction to either the lower or middle term. (*People v. Anderson* (2023) 88 Cal.App.5th 233, 242-243 (*Anderson*) [by failing to object to the upper term at § 1172.75 resentencing proceedings, defendant forfeited the argument that, the trial court erred "by failing to articulate the reasons for imposing the upper term and by relying on improper factors to do so"]; *People v. Tilley* (2023) 92 Cal.App.5th 772, 778 (*Tilley*) [defendant did not seek a lower term pursuant to § 1170, subd. (b)(6) and therefore forfeited the claim on appeal].) Gonzalez also argues that the express language of section 1172.75, subdivision (d)(2) requires courts, when resentencing under that statute, to "apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." Accordingly, Gonzalez claims that forfeiture would not be compatible with the fundamental purpose behind the resentencing provisions in section 1172.75.

In response, the Attorney General contends that this case should not be distinguished from *Tilley* and *Anderson* because Gonzalez's trial counsel did not object to the imposition of the upper term as invalid. The Attorney General argues that Gonzalez only requested that certain enhancements be stricken or an overall lower sentence be imposed, but never specifically asked for the lower or middle term in accordance with current section 1170, subdivisions (b)(2) and (b)(6). Accordingly, the Attorney General urges this court to follow the holdings in *Tilley* and *Anderson* in finding that Gonzalez has forfeited his claim.

In general, claims not raised in the trial court may not be raised for the first time on appeal. (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590.) This includes "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (*People v. Scott* (1994) 9 Cal.4th 331, 353.)

12

Here, it is undisputed that Gonzalez's trial counsel did not address section 1170, subdivision (b), as part of his resentencing petition in the trial court. With that said, we find the case of *People v. Coddington (*2023*)* 96 Cal. App.5th 562 (*Coddington*), particularly persuasive in determining whether to find forfeiture of Gonzalez's claims on appeal, as opposed to *Tilley* or *Anderson*. In *Coddington*, trial counsel only requested that the defendant's prison prior enhancements be dismissed, pursuant to section 1172.75 and did not seek any further sentencing relief. (*Coddington,* at p. 567.) However, the appellate court declined to find forfeiture and exercised its discretion to reach the merits of the appeal, noting that in doing so, it did not need to reach the merits of the defendant's alternate claim for ineffective assistance of counsel. (*Id.* at pp. 567-568.) The appellate court cited *People v. Monroe* (2022) 85 Cal.App.5th 393, in support, where a different appellate court chose to reach the merits of a forfeited issue in order to "forestall" a cognizable ineffective assistance of counsel claim. (*Id.* at p. 400.) In the instant matter, Gonzalez has similarly raised an alternative claim for ineffective assistance of counsel in the event this court finds forfeiture.

The California Supreme Court in *People v. Lynch* (2024) 16 Cal.5th.730 (*Lynch*), recently held that under the current version of section 1170, subdivision (b), "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch,* at p. 768.) As discussed in more detail below, because the application of amended section 1170, subdivision (b) implicates a constitutional right, we do not apply forfeiture in this situation. Therefore, we will exercise our discretion to reach the merits of Gonzalez's claims and need not address his alternative claim for ineffective assistance of counsel.[13]

---

[13] We recognize that in the recent case of *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-Thompson*), the Third District reached the opposite (continued)

## 2. Resentencing Error

### a. The Trial Court Erroneously Relied On Aggravating Factors That Did Not Meet the Requirements of Section 1172.75, subdivision (d)(4) or Section 1170, subdivision (b)(2)

Gonzalez argues that the court failed to properly apply section 1170, subdivision (b)(2), because the aggravating factors identified in support of the upper term were not proven beyond a reasonable doubt by a jury or court, or previously stipulated. In so arguing, he claims that this court must "reconcile" section 1170, subdivision (b)(2) with section 1172.75, subdivision (d)(4), which might be interpreted to not require the court to identify aggravating factors if the defendant was previously sentenced to the upper term. Gonzalez specifically argues that because section 1170, subdivision (b)(2) triggers a constitutional right to findings of fact regarding aggravating factors, the same standard should equally apply to section 1172.75, subdivision (d)(4).

In response, the Attorney General notes that pursuant to section 1172.75, subdivision (d)(4),"*[u]nless the court originally imposed the upper term,* the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true

conclusion and found forfeiture in a similar scenario, namely, where the defendant failed to challenge the reimposition of an upper term sentence during section 1172.75 resentencing proceedings in the trial court. However, in that case, the court concluded that section 1172.75, subdivision (d)(4) "carves out an exception to the general rule that all ameliorative changes to the law must be applied at a section 1172.75 resentencing and does not require aggravating factors to be found true beyond a reasonable doubt if the upper term was previously imposed." (*Brannon-Thompson, supra,* 104 Cal.App.5th at p. 458.) The court therefore concluded that there was no ineffective assistance of counsel because counsel could not raise a valid objection to resentencing. (*Id.* at pp. 465-467.) As discussed *infra,* we respectfully disagree with this interpretation of section 1172.75, subdivision (d)(4), and therefore do not reach the same conclusion as the *Brannon-Thompson* court.

14

beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Italics added.) The Attorney General therefore claims that under the plain language of the statute, an admission or jury finding on circumstances in aggravation is only required if the resentencing court newly imposes an upper term, not if an upper term sentence was previously imposed. The Attorney General characterizes this language as an "exception" to the requirement under section 1170, subdivision (b), that any aggravating circumstances be proven beyond a reasonable doubt or stipulated to by the defendant.

In supplemental briefing on this issue, the Attorney General argues that recent case law supports the proposition that section 1172.75, subdivision (d)(4) provides an exception to the middle term on resentencing if the upper term had previously been imposed.[14] The Attorney General argues that this court should similarly find that section 1172.75, subdivision (d)(4) provides an exception to the requirements of section 1170, subdivision (b)(2) regarding proof of aggravating factors to re-impose an upper term sentence.

In response, Gonzalez argues that such an interpretation does not adequately address a defendant's right to ameliorative changes in the law following the passage of Senate Bill 567, or the interplay between section 1172.75, subdivision (d)(4) and section 1172.75, subdivision (d)(2). He also cites the legislative intent behind Senate Bill 483, which was to correct past sentencing disparities based on racial bias and reduce the negative impact of long sentences on prisoners and their families. Gonzalez therefore argues that this intent would only be accomplished by granting him the "safeguards" for proof of aggravating circumstances, as provided for in section 1170, subdivision (b)(2).

---

[14] In making this argument, the Attorney General initially relied on the case of *People v. Ellis* (May 15, 2024, B325433) opinion ordered nonpublished July 31, 2024, S285552. As the case was subsequently depublished, we do not discuss it in this opinion.

15

In evaluating the parties' opposing positions regarding the meaning of section 1172.75, subdivision (d)(4), "our 'fundamental task … is to determine the Legislature's intent so as to effectuate the law's purpose.' … 'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.' … 'If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.' " (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105–1106, citations omitted.)

Considering these principles, we first look at the express language of the statute. We acknowledge that the plain language of section 1172.75, subdivision (d)(4), on its face, could be interpreted as not requiring proof of aggravating factors before reimposing an upper term sentence. For example, in *Brannon-Thompson,* the Third District interpreted section 1172.75, subdivision (d)(4) in such a manner, finding that section 1172.75 "carves out an exception to the general rule that all ameliorative changes to the law must be applied at a section 1172.75 resentencing and does not require aggravating factors to be found true beyond a reasonable doubt if the upper term was previously imposed." (*Brannon-Thompson, supra*, 104 Cal.App.5th at p. 458.) Such an interpretation would appear to find that the opening clause of section 1172.75, subdivision (d)(4), "[u]nless the court originally imposed the upper term," exempts the resentencing court from being required to comply with recent changes in sentencing laws, including section 1170, subdivision (b)(2), which expressly requires a court to identify circumstances in aggravation – either proven beyond a reasonable doubt or stipulated to by the defendant – before imposing an upper term sentence.

However, another reasonable interpretation of section 1172.75, subdivision (d)(4) would simply *restrict the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a

16

condition or exception independently justifying the imposition of the upper term. Under such an interpretation, a defendant would be eligible for the upper term but could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact.

In addition, within the same statutory scheme and without any qualifying language, section 1172.75, subdivision (d)(2) directs the resentencing court to "*apply any other changes in law that reduce sentences or provide judicial discretion so as to eliminate disparity of sentences and…promote uniformity of sentencing.*" It therefore would follow that "changes in law" would include the current version of section 1170, subdivision (b)(2), which became effective January 1, 2022.

Based on the constitutional dimension of this issue as outlined in *Lynch*, we do not agree with the Attorney General's interpretation of section 1172.75, subdivision (d)(4). More specifically, if we were to accept the Attorney General's interpretation of section 1172.75, subdivision (d)(4) as an exception, this would potentially result in the statute impermissibly exempting defendants who previously received upper term sentences from the rule that eligibility for any upper term sentence depends on "facts that have been established consistently with Sixth Amendment principles." (*People v. Black* (2007) 41 Cal.4th 799, 813.) In *Lynch*, the majority opinion found that compliance with amended section 1170, subdivision (b) implicates the Sixth Amendment right to a jury trial, stating that: "Under the current statute the middle term is the maximum term that can be imposed unless additional factual determinations are made. It is the requirement of additional factfinding that brings the Sixth Amendment into play. [Citation.]" (*Lynch*, *supra*, 16 Cal.5th at p. 759.) The California Supreme Court went on to say: "[T]he aggravating facts that would 'justify' an upper term sentence [citation] are the same facts that 'expose' the defendant to imposition of that sentence in the trial court's discretion. [Citation.] Stated another way, under the current statute the aggravating facts used to 'justify' an upper term sentence are 'necessary to [its] imposition,' [citation], and

17

effectively function like elements of a crime. [Citation.]" (*Id.* at p. 760.) Accordingly, reading an exemption into section 1172.75, subdivision (d)(4), in the manner suggested by the Attorney General, and thereby allowing a court to resentence a defendant to an upper term sentence without proof beyond a reasonable doubt of aggravating factors, would run afoul of the Sixth Amendment implications identified in *Lynch*. (See *Lynch*, at p. 768 [holding that "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established"].)

Under the doctrine of constitutional avoidance, a statute should not be construed to violate the Constitution if any other construction is viable. (*People v. Garcia* (2017) 2 Cal.5th 792, 804.) With that in mind, the statutory interpretation for section 1172.75, subdivision (d)(4), which simply *restricts the scope of defendants eligible to receive the upper term*, allows us to read the statute in a manner that is internally consistent and avoids running afoul of the Sixth Amendment. Under such an interpretation, a defendant would be eligible for the upper term but could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact. In other words, the same requirements for imposing an upper term under section 1170, subdivision (b)(2) would apply, thus eliminating any potential conflict between the statutes. As a result, section 1172.75, subdivisions (d)(2) and (d)(4) would also not conflict, and the statutory scheme would not be construed to violate the Sixth Amendment.

We therefore respectfully disagree with the Third Appellate District's decision in *Brannon-Thompson*, which held that under the plain language of section 1172.75, subdivision (d)(4), "it is evident the Legislature intended the new burden of proof amendments to section 1170, subdivision (b) apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing." (*Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.) *Brannon-Thompson* did not address the

18

constitutional aspect of section 1170, subdivision (b), as set forth in *Lynch*.

Consequently, the trial court could not impose a sentence exceeding the middle term unless there were circumstances in aggravation that justified the imposition of a term of imprisonment exceeding the middle term, and those facts had been stipulated to by the defendant, or had been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.

Turning to the six aggravating factors cited by the court in re-imposing the upper term, we accept that these factors all fall within the categories identified in California Rules of Court, rule 4.421, which details various circumstances in aggravation that can be considered at sentencing. Further, we recognize, as does Gonzalez, that the following three factors were admitted to by Gonzalez as part of his plea: (1) he inflicted great bodily injury as to count one; (2) he suffered two strike priors; and (3) he had served a prior prison term.

However, the remaining factors, namely: (1) Gonzalez's prior convictions of increasing seriousness; (2) his commission of the crime in question while on parole; and (3) his repeated parole violations, were not admitted to by Gonzalez or proven beyond a reasonable doubt by a jury or a judge. We acknowledge that there are recent appellate cases which hold that these particular factors are exceptions to the jury trial requirement under the Sixth Amendment; however, this is only when the prosecution introduces a certified record of prior conviction, from which the trial court can then determine if the above factors are applicable. (See *People v. Pantaleon* (2023) 89 Cal.App.5th 932, 938 [finding that a court may decide the aggravating factor that a defendant's prior convictions are numerous or of increasing seriousness from examining a prior record of conviction without submitting the matter to a jury]; *People v. Wiley* (2023) 97 Cal.App.5th 676, 686, rev. granted Mar. 12, 2024, S283326 [concluding that "once a defendant's prior convictions are properly established by a certified record, a trial court may 'consider' those convictions in determining whether related aggravating factors

apply…includ[ing] the increasing seriousness of a defendant's convictions and the defendant's poor prior performance on probation or parole"].) Such holdings also comport with the express language of section 1170, subdivision (b)(3), which allows the trial court to consider a defendant's prior convictions during sentencing without submitting the matter to a jury only if the convictions are based on a certified record of conviction. While the People indicated in their moving papers that they would be introducing a certified RAP sheet at the hearing, the record does not reflect this document was actually introduced at resentencing or that the trial court relied on such a document in identifying aggravating factors justifying imposition of an upper term sentence. Indeed, the trial court indicated it was simply restating aggravating factors previously cited in the probation report. Accordingly, based on the record before us, we find the trial court erred in relying on the three factors cited above without meeting the requirements of either section 1170, subdivision (b)(2) or section 1172.75, subdivision (d)(4) that such factors be stipulated or proven beyond a reasonable doubt.

### b. The Court's Resentencing Error Was Not Harmless and Requires Remand

In *Lynch, supra,* 16 Cal.5th at pages 742-743, the California Supreme Court resolved a previous split in authority between the Courts of Appeal regarding the applicable standard for determining whether there is harmless error when a defendant is sentenced under the former version of section 1170 and the amended version applies retroactively. As noted above, the *Lynch* court concluded that "under the current statute [of section 1170] a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the

20

current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing." (*Lynch,* at p. 768.)

Using the standard espoused in *Lynch*, we conclude that the matter must be remanded for resentencing. As noted above, only three of the aggravating factors that the court cited in support of its imposition of the upper term were admitted to by Gonzalez as part of his plea. Accordingly, the trial court relied on some unproven aggravating factors to support its reimposition of Gonzalez's upper term sentence, thus implicating the Sixth Amendment as contemplated under *Lynch*. (*Lynch, supra,* 16 Cal.5th at p. 768.)

First, the record does not provide any indication that any evidence was offered regarding the non-proven factors apart from Gonzalez's prior probation report from his original sentencing proceedings. As discussed above, the People indicated that they would be providing a certified RAP sheet containing information regarding Gonzalez's prior convictions and criminal history, but the record contains no indication that this document was ever provided to the court or relied on in the court's final sentencing decision. Therefore, we cannot conclude beyond a reasonable doubt that a jury would have found the unproven aggravating factors true beyond a reasonable doubt, or that such factors were otherwise proven true in compliance with the current requirements under section 1170, subdivision (b).

Second, we note that in making its ruling, the court merely restated the aggravating factors previously identified in the probation report, and made no indications that it was assigning particular weight or importance to any specific factor. Further, the court indicated that it was not inclined to reduce Gonzalez's sentence based on Gonzalez's conduct in prison, as documented by both Gonzalez and the People in their moving papers, thus making it unclear whether such subsequent conduct, and not the aggravating factors cited, was the deciding factor for the court's imposition of the upper term. Accordingly, because there is no clear indication from the record that the trial court

21

would have still imposed the upper term based solely on the three aggravating factors that Gonzalez admitted as part of his plea, remand is required for a full resentencing. (See *People v. Salazar* (2023) 15 Cal.5th 416, 429-430 [finding that it would be speculation by the appellate court to conclude that the trial court would have imposed the same sentence absent a clear indication of the court's intent on the record].)

Under the standard delineated in *Lynch*, the violation of Gonzalez's Sixth Amendment right was prejudicial, and remand for resentencing is required. As we are remanding for resentencing, we need not consider whether the court erred in not imposing the lower term based on the evidence Gonzalez provided regarding his childhood trauma, as required under section 1170, subdivision (b)(6), since Gonzalez is entitled to raise this issue on remand. In reaching our decision, we do not express any position on what term the court should impose on resentencing.

### III.   DISPOSITION

The trial court's resentencing order is reversed, and the matter is remanded for resentencing consistent with section 1172.75, subdivision (d), including the applicability of section 1170, subdivisions (b)(2) and (b)(6).

_____
                                 Wilson, J.

I CONCUR:

_____
Bamattre-Manoukian, Acting P.J

People v. Gonzalez
H050752

BROMBERG, J., Concurring.

I am skeptical whether, based solely on its text, Penal Code section 1172.75, subdivision (d)(4), is reasonably interpreted to restrict the class of defendants eligible for upper term sentences on resentencing under Penal Code section 1172.75. However, I agree with the majority that a contrary interpretation permitting imposition of upper term sentences without stipulation or proof beyond a reasonable doubt of aggravating factors would violate the Sixth Amendment to the United States Constitution under our Supreme Court's recent decision in *People v. Lynch* (2024) 16 Cal.5th 730. In addition, the doctrine of constitutional avoidance, which requires us to avoid interpretations rendering a statute unconstitutional, applies whenever a constitutional construction is possible, not reasonable. (*People v. Garcia* (2017) 2 Cal.5th 792, 804 ["Under the doctrine [of constitutional avoidance], a statute should not be construed to violate the Constitution ' " 'if any other possible construction remains available.' " ' "].) Because the majority's interpretation satisfies this standard, I join in adopting that interpretation.

1

_____

BROMBERG, J.

*People v. Gonzalez*
H050752

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.: C1232508 |

Trial Judge:                  The Honorable William J. Monahan,

Attorneys for Defendant and Appellant

ULYSSES ISMAEL GONZALEZ:          Michelle D. Spencer

under appointment by the Court of

Appeal for Appellant

Attorneys for Plaintiff and Respondent      Rob Bonta,

THE PEOPLE:                              Attorney General of California

Lance E. Winters,

Chief Assistant Attorney General

Jeffrey M. Laurence,

Senior Assistant Attorney General

Eric D. Share,

Supervising Deputy Attorney

General

Alisha M. Carlile,

Deputy Attorney General

H050752
People v. Gonzalez